1  JON E. MAKI, CAL. BAR NO. 199958
    Law Office of Jon E. Maki
2    4135 Calle Isabelino
    San Diego, CA 92130
3  Telephone:     (858) 876-2580
   Facsimile:     (858) 876-1915
4  Email:  jonmaki.esq@gmail.com

5  MICHAEL D. EISENBERG, CAL BAR NO. 235252
    Law Office of Michael D. Eisenberg
6    3258 Caminito Eastbluff, Suite 89
    San Diego, California  92037
7  Telephone:     (858) 812-0820
   Facsimile      (858) 761-0240
8  Email:  meisenberg@mdepatents.com

9  Attorneys for Plaintiff
   Imagine That International, Inc. dba
10 All Four Paws

11                    UNITED STATES DISTRICT COURT

12                  SOUTHERN DISTRICT OF CALIFORNIA

13

| 14 | IMAGINE THAT INTERNATIONAL, INC., a California corporation dba ALL FOUR PAWS | CASE NO.   **'12CV1153 IEG  WVG** |
|----|---|---|
| 15 | | |
| 16 | | **COMPLAINT FOR PATENT INFRINGEMENT, UNFAIR COMPETITION, TRADE LIBEL, AND INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS** |
| 17 | Plaintiff, | |
| | v. | |
| 18 | | |
| 19 | CONTECH ENTERPRISES, INC. a foreign corporation and DOES 1-100, inclusive, | **REQUEST FOR JURY TRIAL** |
| 20 | Defendants. | |

21

22

23

24

25

26

27

28

# I.

## <u>JURISDICTION AND VENUE</u>

1.      This action arises under the Patent Laws of the United States, Title 35, United States Code, and under the common law of the United States.  This Court has original and exclusive jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The matter in controversy complained of herein exceeds the sum or value $75,000.

2.      This Court has personal jurisdiction over Defendant in this action and venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because, as alleged below, Defendants have intentionally engaged in substantial business within this forum amounting to sufficient minimum contacts, including but not limited to, the offering and selling their infringing products in this judicial district, the harm caused to Plaintiffs by Defendants' acts and omissions was targeted at Plaintiffs and designed to impact Plaintiffs in this judicial district, and a substantial part of the acts or omissions giving rise to the asserted claims occurred or had effects in this judicial district.

# II.

## <u>PARTY ALLEGATIONS</u>

3.      Plaintiff Imagine That International, Inc. is a corporation duly organized and existing under the laws of the State of California, does business as "All Four Paws" ("All Four Paws") and has its principal place of business at 126 Hart Avenue, Santa Monica, CA 90405.

-1-

4.      On information and belief, defendant Contech Enterprises, Inc. ("Contech") is a foreign corporation having its principal place of business located at 19 Dallas Road, Unit 115, Victoria, British Columbia, V8V 5A6, Canada.  On information and belief, on or about June 29, 2011, Contech acquired G&B Marketing, Inc. ("G&B").  On information and belief, employees of G&B became employees of Contech following the acquisition.

5.      Plaintiff does not know the true names and capacities, whether individuals, corporations, companies, partnerships, joint ventures, or otherwise of defendant DOES 1-100, inclusive.  Plaintiff is informed and believes, and on that basis alleges, that each fictitious defendant was in some way responsible for, participated in, or contributed to the matters and things of which Plaintiff complains, and in some fashion, has legal responsibility.  When the exact nature and identity of such fictitious defendants or defendants' responsibility for participation and contribution to the matters and things alleged in this Complaint is ascertained, Plaintiff will seek leave to amend this Complaint.

**III.**

**GENERAL ALLEGATIONS**

6.      The allegations of paragraphs 1-5 above are hereby re-alleged and incorporated herein by reference.

7.      Based in Southern California, All Four Paws is a family run business and an innovator in the field of pet safety and convenience products.  All Four Paws has found a great of success with its patented Comfy Cone® product, an Elizabethan collar medical protective device for animals.

-2-

8.      Since its introduction into the marketplace, the Comfy Cone® has been a hit, both in the U.S. and internationally, having won numerous accolades and recommendations, notably:

- •   Blue Ribbon for Best New Product Superzoo in 2007 and 2008
- •   Blue Ribbon for Best New Product Global Pet Expo in 2008
- •   Silver Medal for best Product H.H. Backers Associates in 2009
- •   Animal Planet highly recommends Comfy Cone and uses the Comfy Cone in their "New Parent" DVD that comes with a pet adoption.

9.      Through its program called All Four Paws With Love, All Four Paws donates the Comfy Cone® to various charitable organizations across the U.S., to support all the wonderful animal shelters and rescue foundations that care for the myriad dogs and cats that have yet to find loving homes.  By donating hundreds of Comfy Cones® to the various non-profit organizations, notably, Animal Planet; Best Friends Animal Society - Kanab, Utah; World Heart Organization- Acton, California; Much Love Animal Rescue -  Los Angeles, California; Humane Society, Calumet Area; Wright –Way Rescue - Niles, Illinois; Save a Yorkie Foundation - Sinking Spring, Pennsylvania; Dogs for Diabetics- Concord, California; Bichon Fur Kids- Oceanside, California; and TCVESSA Foundation- Elk River, Minnesota.  All Four Paws With Love also teams up with a large number of celebrities, politicians and sports figures who are attached to animal charities by working to raise money for animal charities, by offering autographed Comfy Cones® for use in silent auctions and fundraisers.

10.      All Four Paws is the owner of United States Patent No. 8,042,494 entitled "Pet Protective Collar" which was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") on October 25, 2011. (the " '494 patent" or "the patent-in-suit").

11.     A true and correct copy of the '494 patent is attached as Exhibit 1.  By statute, the '494 patent is presumed valid and enforceable under 35 U.S.C. §282.

12.     On information and belief, Defendant, by and through its agents, employees and servants, including but not limited to G&B, make, have made, manufacture, have manufactured, import, use, offer for sale, and/or sell products embodying the invention(s) of at least claim 1 of the patent-in-suit without authorization, permission or license.  Defendant offers for sale and sell the infringing products, including but not limited to the Pro Cone product, through multiple marketing streams including offering and selling infringing products directly to customers in this judicial district through their interactive website, http://www.contech-inc.com, via the Internet.

13.     Defendant, by and through its agents, employees and servants, including but not limited to G&B, have disparaged All Four Paws' product, the Comfy Cone® using false statements of fact about the product as set forth in more detail below.

14.     On information and belief, Defendant, by and through its agents, employees and servants, including but not limited to G&B, have told a number of All Four Paws' customers and potential customers that the Paws' Comfy Cone® product is dangerous to animals because it is prone to bacteria growth and infestation among other product disparagements.

15.     On information and belief, these knowingly and provably false statements about the Comfy Cone® took place a several different trade shows.

16.     On information and belief, Defendant's comments were made as statements of fact, not opinion, and were made without any factual support whatsoever.  The knowingly false statements were made with malice and the intent to both damage customers' and

-4-

potential customers' impressions of the product and drive sales of Defendant's competing product, the Pro Cone.

17.     Several of All Four Paws' loyal customers notified Plaintiff of the disparaging claims.  But other customers undoubtedly purchased the Pro Cone and/or avoided purchasing All Four Paws' products as a result of Defendant's false statements.  Specifically, more than one veterinarian attending the trade show referred to "bacterial problems" with the Comfy Cone®, inquired whether Plaintiff intended to do anything to fix those problems, and indicated that they would not sell or recommend the product until Plaintiff remedied them.  On information and belief, Defendant falsely told those veterinarians that the Comfy Cone® has bacterial problems.  As a result, All Four Paws has lost sales and suffered injury to its product goodwill.

18.     Defendant, by and through its agents, employees and servants, including but not limited to G&B, has intentionally interfered with the contract between All Four Paws and Petco Corporation ("Petco").

19.     All Four Paws entered into a valid contract with Petco on or about July 2008 for the sale of the Comfy Cone® in Petco stores and online.

20.     Defendant, by and through its agents, employees and servants, including but not limited to G&B, knew about All Four Paws' contract with Petco.

21.     Defendant, by and through its agents, employees and servants, including but not limited to G&B, intended to disrupt the performance of this contract by making false statements to representatives of Petco regarding All Four Paws' products and whether the Comfy Cone® is patentable.  Specifically, G&B told the buyer for Petco that All Four Paws' products

COMPLAINT

were not capable of being patented and attempted to undercut or otherwise interfere with AFP's contractual relationship with Petco.

22.     Defendant's conduct prevented performance of the contract by Petco through false information, causing Petco to terminate the in-store sales portion of the All Four Paws agreement.  Beginning in April, 2012, All Four Paws is only allowed to sell its products through Petco's website, not in stores.

23.     All Four Paws was harmed by Defendant's intentionally false statements, which were a substantial factor in causing All Four Paws' harm.

## FIRST CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,042,494)

24.     Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 23 of this Complaint, as set forth above.

25.     Defendants, by and through their agents, employees, and servants, have infringed at least claim 1 of '494 patent by making, having made, manufacturing, having manufactured, importing, using, offering for sale, and/or selling, without Plaintiff's authority, products embodying the claimed invention(s), including but not limited to Defendant's Pro Cone product.

26.     By reason of Defendant's infringement, Plaintiffs have suffered and are suffering damages, including but not limited to, lost sales and impairment of the value of the '494 patent, in an amount yet to be determined.

COMPLAINT

27.     Upon information and belief, Defendant's acts of infringement are willful, having been committed with notice and knowledge of Plaintiff's patent rights.

28.     Defendants' acts of infringement are causing irreparable harm to Plaintiffs and will continue to cause irreparable harm unless enjoined by this Court.

## SECOND CLAIM FOR RELIEF

### (Trade Libel)

29.     Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 28 of this Complaint, as set forth above.

30.     Defendant, by and through their agents, employees, and servants, including but not limited to G&B, have made knowingly false statements of fact disparaging the quality of Plaintiff's product, the Comfy Cone®.  Defendant's knowingly false statements of fact include, but are not limited to, that the Comfy Cone® is dangerous to animals because it is prone to bacterial growth and infestation.

31.     Defendant's statements are provably false.  The Comfy Cone® is not dangerous to animals and is not prone to bacterial growth or infestation.  Defendant knew these statements to be false at the time they were made and/or acted with reckless disregard for the falsity of the statements.

32.     Defendant's knowingly false statements were made with malice and the intent to both damage customers' and potential customers' impression of Plaintiff's product and drive sales of Defendant's competing product, the Pro Cone.

33.     By reason of Defendant's false statements of fact about the Comfy Cone®, Plaintiffs have suffered and are suffering damages, including but not limited to, lost sales and impairment of the value of its product's goodwill, in an amount yet to be determined.

34.     Defendant's acts of trade libel are causing irreparable harm to Plaintiff and will continue to cause irreparable harm unless enjoined by this Court.

### THIRD CLAIM FOR RELIEF

**(Intentional Interference with Contractual Relations)**

35.     Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 34 of this Complaint, as set forth above.

36.     Defendant, by and through their agents, employees, and servants, including but not limited to G&B, have interfered with and caused the disruption of Plaintiff's contractual relationship with Petco.

37.     Defendant's false statements were intended to disrupt the performance of this contract when G&B told the buyer for Petco that the Comfy Cone® is not patentable and that All Four Paws was overcharging for its products.

38.     Defendant's false statements prevented performance of the contract by Petco and caused Petco to terminate the in-store sales portion of the All Four Paws agreement.

39.     Plaintiffs have suffered and are suffering damages, including but not limited to, lost sales and impairment of the value of its Comfy Cone® product in an amount yet to be determined.

-8-

COMPLAINT

## FOURTH CLAIM FOR RELIEF

### (Unfair Competition)

40.     Plaintiffs reallege and incorporate herein by reference the allegations contained in Paragraphs 1 through 39 of this Complaint, as set forth above.

41.     Defendant, by and through their agents, employees, and servants, including but not limited to G&B, has unfairly competed with Plaintiff by making false statements disparaging Plaintiff's product, disrupting Plaintiff's relationships with actual customers and potential customers.

42.     By reason of Defendants' actions, Plaintiffs have suffered and are suffering damages, including but not limited to, lost sales and impairment of the value of the '494 patent, in an amount yet to be determined.

43.     Defendants' actions are causing irreparable harm to Plaintiffs and will continue to cause irreparable harm unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A.     Judgment that Defendants have infringed U.S Patent No. 8,042,494.

B.     An award of damages for infringement of U.S Patent No. 8,042,494 in an amount to be determined at trial.

C.     Additional damages for willful infringement of U.S Patent No. 8,042,494 in an amount to be determined at trial.

D.     A preliminary and thereafter permanent injunction prohibiting Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from further infringement of U.S Patent No. 8,042,494.

-9-

COMPLAINT

E.       Judgment that this is an exceptional case under 35 U.S.C. § 285 and awarding Plaintiffs' their reasonable attorneys' fees.

F.       A preliminary and thereafter permanent injunction prohibiting Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from further unfair competition and trade libel for disparagement of Plaintiff's products.

G.       Judgment that Defendant committed trade libel.

H.       An award of damages for trade libel against Plaintiff's products in an amount to be proven at trial.

I.       Judgment that Defendant intentionally interfered with contractual relations between All Four Paws and Petco.

J.       An award of damages for intentional interference with contractual relations in an amount to be proven at trial.

K.       Costs of suit; and

Such other relief as the Court deems just and proper.

Dated:  May 11, 2012

By       /s Jon E. Maki

JON E. MAKI,
MICHAEL D. EISENBERG

Attorneys for Plaintiff
IMAGINE THAT INTERNATIONAL, INC., dba ALL FOUR PAWS

-10-

1

### DEMAND FOR JURY TRIAL

2

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff IMAGINE THAT

3 INTERNATIONAL, INC. hereby demands a trial by jury on this Complaint as to all issues that

4 may be so tried.

5

6 Dated:  May 11, 2012

7

8

9                                                          By        /s Jon E. Maki

10                                                                                  JON E. MAKI,
                                                                        MICHAEL D. EISENBERG

11
                                                                               Attorneys for Plaintiff
12                                                                 IMAGINE THAT INTERNATIONAL, INC., a
                                                                   California corporation dba ALL FOUR PAWS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-

US008042494B2

(12) **United States Patent**   (10) **Patent No.:** **US 8,042,494 B2**
Markfield   (45) **Date of Patent:** **Oct. 25, 2011**

(54) **PET PROTECTIVE COLLAR**

(76) Inventor: **Linda Markfield**, Los Angeles, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/847,156**

(22) Filed: **Aug. 29, 2007**

(65) **Prior Publication Data**

US 2009/0056642 A1   Mar. 5, 2009

(51) **Int. Cl.**
*A01K 13/00* (2006.01)
*A01K 29/00* (2006.01)

(52) **U.S. Cl.** ........................ 119/**855**; 119/821; 119/815

(58) **Field of Classification Search** ................. 119/856, 119/821, 855, 815, 837, 863, 865
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 180,518 | A | 8/1876 | Armentrout |
| 205,515 | A | 7/1878 | Von Culin |
| 1,960,312 | A | 5/1934 | Landorf |
| 2,043,153 | A | 6/1936 | Cox |
| 2,188,787 | A | 1/1940 | Keener |
| 2,233,832 | A | 3/1941 | Byrd |
| 2,241,855 | A | 5/1941 | Heisterberg |
| 2,496,748 | A | 2/1950 | Pond |
| 2,799,245 | A | 7/1957 | Ruggiero et al. |
| 2,810,368 | A | 10/1957 | McCombe |
| 2,891,508 | A | 6/1959 | Bower |
| 2,956,542 | A | 10/1960 | Mueller |
| 2,989,030 | A | 6/1961 | Draheim |
| 2,998,008 | A | 8/1961 | Klesa |
| 3,013,530 | A | 12/1961 | Zeman |
| 3,036,554 | A | 5/1962 | Johnson |

| | | | |
|---|---|---|---|
| 3,072,098 | A | 1/1963 | Boemle |
| 3,153,399 | A | 10/1964 | Koon |
| 3,696,810 | A | * 10/1972 | Gaylord, Jr. ................... 602/18 |
| 3,942,306 | A | 3/1976 | Kulka |
| 3,983,604 | A | 10/1976 | Phillips |
| 4,036,179 | A | 7/1977 | Turner et al. |
| 4,200,057 | A | 4/1980 | Agar |
| 4,286,547 | A | 9/1981 | Nuwbauer et al. |
| 4,328,605 | A | 5/1982 | Hutchison et al. |
| 4,476,814 | A | 10/1984 | Miller |
| 4,622,957 | A | 11/1986 | Curlee |
| 4,667,098 | A | 5/1987 | Everett |
| 4,719,876 | A | * 1/1988 | Wilken ........................ 119/815 |
| 5,012,764 | A | * 5/1991 | Fick et al. .................... 119/821 |
| 5,133,295 | A | * 7/1992 | Lippincott ................... 119/821 |
| 5,197,414 | A | 3/1993 | Kanakura |
| 5,307,764 | A | 5/1994 | Moy |

(Continued)

FOREIGN PATENT DOCUMENTS

DE    4100851 A1 * 7/1991

(Continued)

*Primary Examiner* — Son T Nguyen

(74) *Attorney, Agent, or Firm* — Michael D. Eisenberg

(57)   **ABSTRACT**

A custom fittable collar for an animal, useful to prevent the animal from contacting injured areas on the body, thus promoting healing of wounds. The collar comprises opposing sheets of flexible material with a resilient material held between them. The resulting collar is rigid enough to resist deformation thus preventing licking or biting of a wound by the animal, but soft enough that the collar is both comfortable to wear, and less likely to catch on other objects, thus improving the safety and wearability of the collar. The collar further comprises a closure assembly adapted for easy placement or removal of the collar. The collar further comprises stitching that creates fold lines to allow the collar to be conveniently folded.

**13 Claims, 7 Drawing Sheets**





Exhibit 1
Page 1

**US 8,042,494 B2**

Page 2

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,697,328 | A | * | 12/1997 | Hunter | 119/714 |
| 5,915,337 | A | * | 6/1999 | Klinkhart et al. | 119/815 |
| 6,044,802 | A | | 4/2000 | Schmid et al. | |
| 6,244,222 | B1 | * | 6/2001 | Bowen | 119/856 |
| 6,532,904 | B1 | * | 3/2003 | Bowen | 119/865 |
| 6,659,046 | B2 | * | 12/2003 | Schmid et al. | 119/815 |
| 2007/0073203 | A1 | * | 3/2007 | Moenning et al. | 602/18 |
| 2007/0181080 | A1 | * | 8/2007 | Gibson | 119/815 |
| 2007/0199521 | A1 | * | 8/2007 | Winestock | 119/855 |
| 2009/0000569 | A1 | | 1/2009 | Behravesh | |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| FR | 2628290 | A1 | * | 9/1989 |
| JP | 10028489 | A | * | 2/1998 |
| JP | 2007089552 | A | * | 4/2007 |
| WO | WO 8400666 | A1 | * | 3/1984 |

* cited by examiner

Exhibit 1
Page 2



FIG. 1



FIG. 2

Exhibit 1
Page 3



FIG. 3

FIG. 4

FIG. 5

Exhibit 1
Page 4



FIG. 6



FIG. 7

Exhibit 1
Page 5



Exhibit 1
Page 6



Exhibit 1
Page 7



FIG. 10



FIG. 11

Exhibit 1
Page 8



FIG. 12

Exhibit 1
Page 9

US 8,042,494 B2

**1**

## PET PROTECTIVE COLLAR

### FIELD

The present invention relates to protective collars, also known as veterinary restraints, for small animals and commonly called "Elizabethan collars" or "e-collars". The collar is useful for preventing the animal from licking or biting wounds, or disrupting surgical stitches. The collar further prevents disruption of medications applied topically at the site of an injury, or surgical wound.

### BACKGROUND

When wounded or when a diseased site is present, many animals, for example cats and dogs will instinctively lick or bite at the site of the injury or disease. Repeated licking typically results in slower healing and increased risk of infection. Where animals have undergone a surgical procedure, licking further risks disruption of sutures placed to keep the surgical wound closed while the healing process proceeds. Disruption of a surgical wound is highly undesirable as it subjects the animal to the risk of serious or even fatal internal infections. In any case where a medication is applied, the animal tends to lick it.

As a result, a variety of approaches have been developed to prevent animals from licking or otherwise disturbing wounds or a diseased or injured area while they are healing. For example, one common approach is to use a protective collar known as an "Elizabethan collar" or "E-collar" as they are sometimes called. These collars usually are formed from flexible but relatively rigid materials such as sheets of plastic or cardboard, and are provided in a range of sizes in order to accommodate animals of different size. The E-collar is wrapped around the animal's neck and then secured in place as a means by which to prevent the animal from contacting or otherwise disturbing a wound or site of application of a topical medicament.

One example is provided by U.S. Pat. No. 4,200,057 (Agar), which discloses a method of using a cone-shaped collar made of a semi-rigid material that when secured forms a cone around the animal's neck and which prevents the animal from contacting a region on the animal to which a substance has been applied topically. However, while commonly used, traditional E-collars suffer from a number of limitations that detract from their usefulness.

For example, as discussed above, these collars are usually fashioned from relatively rigid materials. Consequently they are not adapted to folding and take up significant space when on a store shelf, or when stored by an animal owner after purchase and between uses. In addition, the rigid material tends to be uncomfortable for the animal to wear and it can break if bent too far. The rigid materials typically used in E-collars also make it difficult for the animal to eat or drink or get through tight spaces, and the pet is jarred if it bumps into something straight-on. The rigid E-collars can scratch furniture, knock things over and hurt a person. Also, the noise of striking something or even brushing against something can cause stress for the pet.

It is well known in the art that animals dislike the application of the E-collar and will attempt to remove it. This results in increased stress to the animal, and if removed, obviates the utility of the collar to prevent contact of an injured area by the animal, prolonging healing time and increasing the risk of serious infection.

A variety of protective collars have been described, some based on the traditional E-collar design, and others using

**2**

other designs. For example, U.S. Pat. No. 5,012,764 (Fick & Fair) discloses a cone-shaped E-collar with a custom fittable closure. The device improves upon the traditional collar in that it provides a "one-size fits all" capability. However, the Fick device still suffers from design limitations in that it is a rigid collar that animals dislike.

U.S. Pat. No. 5,469,814 (Moy & Moy) discloses a protective collar that avoids the cone-shape of the traditional E-collar. In the Moy device, the collar comprises a sheet of flexible material sized to cover the entire neck from the back of the mandible to the scapula. Thus, the movement of the neck is restricted such that the animal is prevented from licking or biting at wounds. However, the device is not useful in protecting irritation of injuries to the head as the close fitting design does not prevent pawing of an injury of the head or face.

Similarly, U.S. Pat. No. 4,476,814 (Miller) discloses a donut shaped collar that is wide enough to prevent an animal from turning its head sufficiently in order to lick or chew at an affected area.

Likewise, U.S. Pat. No. 6,244,222 (Bowen) discloses a foam sleeve that like that disclosed in U.S. Pat. No. 5,469,814 covers a region of the animal's neck thereby preventing the animal from bending the neck in order to contact an affected area.

As discussed, the aforementioned E-collars are generally formed from rigid materials, such as plastic, that are uncomfortable and thus not well tolerated by animals. To overcome this problem, some collars have been disclosed that are formed from softer more compliant materials. For example, U.S. Pat. No. 5,133,295 (issued to Lippincott) discloses a collar that comprises two side-by-side rings of soft material, with non-resilient medical padding sewn together along their inner margins. The rings are gathered to form radial pleats that interfere with the ability of the animal to chew or lick affected body parts. However, as the collar could conceivably be bent backwards from the head, it would be possible for an animal to paw at injuries in the head area, again limiting the overall usefulness of this type of collar. Also, a soft e-collar can be easily chewed by the pet due to the inside material being loose.

### SUMMARY

Accordingly it is an object of the present invention to provide a protective collar suitable for use as a veterinary restraint, and which overcomes problems inherent in prior art collars.

It is another object to provide a protective collar comprising resilient yet softer materials than is found in prior art E-collar type devices. To this end, the protective collar of the invention provides first and second sheets of flexible material between which is sandwiched a resilient padding layer. The padding layer provide sufficient structure to maintain the collar in the desired shape when fitted on an animal, but is soft enough such that the collar is more comfortable than prior art collars.

It is thus an object to provide a protective collar that takes advantage of the cone-shape of traditional E-collars, yet is made of more compliant materials such that an animal fitted with the collar will better tolerate it. The collar may be produced in various sizes to accommodate animals of different size, or may provide multiple closures to permit fitting of a single collar onto animals of differing size. Also, using the multiple closure features, the shape of the cone can be adjusted, for example, to be narrower at the outside, or wider

Exhibit 1
Page 10

US 8,042,494 B2

**3**

at the outside. The user can conform the shape as desired to conform to the pet's head and neck shape and size.

The resilient padding layer provides sufficient rigidity that the collar will hold its shape when in use. In one embodiment the padding layer is comprised of foam material. To maintain the structure of the collar, the padding layer is secured to the first and second sheets of flexible material.

In one embodiment the padding layer is laminated into at least one of the first and second sheets of flexible material. Securing the padding to the flexible sheet provides the further advantage of preventing the animal from tearing or otherwise separating the padding layer from the flexible sheets.

The use of stitching may be further used to secure the first and second sheets and padding layer. In one embodiment, radially oriented stitching advantageously provides folding lines to aid in folding the collar for storage when it is not in use.

Fitting the collar on an animal is simple. Fitting involves placing the inner edge of the collar around the animal's neck and then securing the ends of the collar, thus forming a truncated cone, with the large opening facing forward, and the smaller opening fitted around the animal's neck.

The securing means may be any suitable means that will maintain the ends of the collar in contact. In one embodiment the means of securing the collar are hook and loop matable fastener strips such as Velcro® strips placed substantially at each end of the collar. Other embodiments could make use of hook and loop arrangements, snaps or other like securing means.

The invention further provides a method of protecting an area on an animal's body from undesired contact such as chewing or biting by fitting a collar as described herein. The area to be protected could be a site of a surgical injury, for example surgical stitches, a non-surgical injury, or an area to which a topical medicament has been applied.

### BRIEF DESCRIPTION OF DRAWINGS

FIG. **1** is a top view of an embodiment of the protective collar in the unfolded configuration.

FIG. **2** is a section view of the protective collar of FIG. **1** through 2-2 of FIG. **1**, depicting the arrangement of first and second exterior sheets and a padding layer and the stitching along each of the arcuate edges.

FIG. **3** is a perspective view of the protective collar of FIG. **1**, as it would appear when fitted on an animal.

FIG. **4** is a top view of another embodiment of the protective collar in the unfolded configuration.

FIG. **5** is a section view of the protective collar of FIG. **2** through 4-4 of FIG. **3**, depicting the arrangement of first and second exterior sheets and a padding layer and the stitching along each of the arcuate edges.

FIG. **6** is a folded view of the protective collar of FIG. **1**.

FIG. **7** is a folded view of the protective collar of FIG. **3**.

FIGS. **8**A-**8**D show folding steps for folding a protective collar into the form as shown in FIG. **7**.

FIGS. **9**A-**9**D show another set of folding steps for folding a protective collar into the form as shown in FIG. **6**.

FIG. **10** shows the protective collar such as in FIG. **1** with its ends attached by use of hook and loop fasteners being mated in a skewed orientation to provide a selected fit.

FIG. **11** shows the protective collar such as in FIG. **1** with its end attached in which the mating strips of hook and loop fasteners are aligned.

**4**

FIG. **12** shows the protective collar such as in FIG. **1** with its outer edge folded back exteriorly.

### DETAILED DESCRIPTION

Referring first to FIGS. **1**, **2** and **3**, the present invention provides a protective collar **1** effective as a veterinary restraint when fitted on an animal. In this embodiment of the invention the protective collar **1** comprises a first exterior sheet **10** comprising a flexible material having inner and outer arcuate edges **12** and **14** respectively, the edges being generally concentric around a common center and extending between a first end **16** and a second end **18**. A second exterior sheet **20** (underneath **10** in FIG. **1**) also comprises a flexible material. The second exterior sheet **20** is substantially the same size and shape to enable creating the two sides of the collar with a space for a resilient padding layer **22** as shown in FIG. **2**.

The resilient padding layer **22**, also of a generally similar shape to the first and second exterior sheets **10** and **20**, and is sized to be located between the first and second exterior sheets **10** and **20** as shown in FIG. **2**. When assembled, the first and second exterior sheets **10** and **20** and the resilient padding layer **30** form a substantially at least semi-circular shape, as has been shown in FIG. **1**. Actually, in order to allow a lot of size adjustability, it is somewhat greater than semi-circular.

The first and second exterior sheets **10** and **20** can be fashioned from a variety of materials including cloth, rubberized cloth, soft plastic and the like. Apart from the physical quality to provide a soft, flexible surface of the finished assembly, the first and second exterior sheets and the resilient padding between them, when formed into the in-use use shape needs only to be sufficiently rigid and resilient to be self-supporting. The present invention uses materials that are soft and flexible and specifically avoids the use of rigid plastic sheet materials as is commonly found in traditional E-collars. In one particular, it may be desirable to select a soft-surfaced comfortable material for the inside of the collar adjacent to the animals head and neck, and a more rugged material for the outside pf the collar. Also, the outside of the collar may be provided in a decorative motif, and may be made of material that is easily cleaned and/or that is resistant to staining.

The padding layer **22** may also be fashioned from a variety of materials. The material used in the padding layer **22** should be flexible enough to provide a collar that is softer and therefore more comfortable than traditional e-collar, yet is rigid enough to maintain the desired cone-like shape of the collar when worn by an animal and sufficiently resilient to return to its cone shape when bent. It is preferred that the first and second exterior sheets **10** and **20** be quite flexible with little resilience and resistance to bending, while the padding layer **22** be more resilient such that when they are formed into a unit and applied to an animal in a cone shape it will be sufficiently rigid to maintain its cone configuration yet will easily give when hit or pushed or bent and resilient enough to recover its cone shape. Foam plastic is a good material for use as the padding layer, and a wide range of resiliency, and thickness is available.

In the embodiment of FIGS. **1**, **2** and **3** the padding layer **22** comprises a layer of foam sandwiched between the first and second exterior sheets **10** and **20**, as shown in FIG. **2**. Other materials such as non-woven sheets or like materials may be used to provide a soft sufficiently resilient and rigid padding layer. The first exterior sheet **10** and the second exterior sheet **20** are joined along their peripheries **12** and **14** by sewing.

Exhibit 1
Page 11

US 8,042,494 B2

5

In the embodiment shown in FIGS. **1**, **2** and **3**, using separate exterior sheets **10** and **20**, they are sewn together along the inner arcuate edge **12** and the outer arcuate edge **14** using conventional hem sewing techniques, using outer hem strips **24** and **26** as shown in FIG. **2**, with the padding layer **30** inside. The padding layer **22** may be sewn-in along the inner arcuate edge or the outer arcuate edge, or just retained in the space, the latter being shown in FIG. **2**. The outer hem strip **24** (and also hem strip **26**) can be made with a reflective surface or a glow-in-the-dark surface for safety and otherwise to easily spot the pet. The reflective surface or glow-in-the-dark surface serves as a means for identifying the animal upon which the collar is fitted.

Stitching can be used to further strengthen the collar while still allowing it to easily bend on contact and also to provide folding points. Radially extending stitching **28***a*, **28***b* and **28***c* comprising two parallel rows, provides some additional rigidity radially and also provides convenient folding points upon which the collar can be folded for storage or packaging, and further strengthen the integrity of the collar when in use. The preferred stitching is zigzag type or parallel rows of straight stitching that is of a selected width dimension such as about ⅛ inch to about ¼ inch and they extend substantially fully across the width from the arcuate edge **14** to the arcuate edge **12**. Examples of collars folded for storage or packaging are shown in FIGS. **6-9***d* and are described below. It can be appreciated that the radial stitching lines are placed so that the collar will fold into at least approximately equal segments such that stitch **28***a* is about at the center of the collar and stitches **28***b* and **28***c* are about half way to the beginning of the closure elements. That will allow it to be optimally folded for packaging or storage.

The invention further comprises a means of closure, effective to secure the ends of the protective collar, such that when the ends of the protective collar are secured, the collar forms a truncated cone with an inner opening **30** and an outer opening **32** as shown in FIG. **3**. Various means of closure are suitable for use in the invention. In one embodiment hook and loop fastener strips such as Velcro products conveniently secure the ends of the collar to form the desired cone shape as shown in FIG. **3**. In the embodiment shown in FIGS. **1**, **2** and **3**, a plurality of first hook and loop strips **34** are on the exterior sheet **10** (facing up in FIG. **1**), in the example, three strips **34** and three sets of tabs **38** and mating plurality of three second hook and loop strips **36** are on the exterior sheet **20** (facing down in FIG. **1**). Also, downward facing tabs **40** are sewn onto the end **16** being fastenable to any pair of the tabs **38**, or any of the strips **34**. As shown in FIG. **1** each end of the protective collar has three strips of fastener material **34** and **36** respectively. This allows the device to be sized appropriately to the animal by allowing a variety of engagement positions for greater or lesser opening neck fitting. Also, with the use of the tabs **40**, in addition to providing options for sizing, the edge **16** can be kept from protruding. As few as one strip on one side and two strips on the other side will allow for minimal size adjustability. Using the multiple closure position features, such as the plurality of hook and loop strips a fitted closure can be selected for mating alignment and matching of the outer and inner edges such as shown in FIG. **11**. This can be referred to as normal or edge aligned fitting. Also, the plurality of strips and tabs allow for non-edge matched closure, such that for example, the strips may be crossed with respect to each other to be not evenly aligned, so that the shape of the cone can be adjusted, for example, to be narrower at the outside, or wider at the outside or similarly at the inside, such as shown in FIG. **10**. This can be referred to as distortion fitting or personalized fitting. The user can conform the shape

6

as desired to conform to the pet's head and neck shape and size. In yet another embodiment snaps are used to secure the ends of the collar.

To maintain the integrity of the collar, the invention provides for a means of securing the first and second exterior sheets to the resilient padding layer. In one embodiment the means of securing the first and second sheets and padding layers comprises laminating or otherwise adhering the padding layer onto at least one of the exterior sheets of flexible material. In another embodiment, the padding layer is laminated or adhered onto both the first and second exterior sheets. Securing the padding layer to the sheets further prevents the animal from separating the layers of the collar and either reducing the effectiveness of the collar or destroying it altogether. In a preferred embodiment the padding layer is laminated or adhered only to the exterior sheet that will be on the inside of the cone, when formed around the animal's head.

Another construction of the protective collar is shown in FIGS. **4** and **5**. It is similar generally to the form in FIGS. **1**, **2**, and **3**, but is suitable for smaller sizes, and softer material. In this form a first exterior sheet **40** and a second exterior sheet **42** are sewn together at the outer arcuate edge **44** with a blind hem stitch while the inner arcuate edge **46** has a regular hem stitch with a hem strip **48**. Radial stitching **50** does not extend to the outer arcuate edge **44** or to the inner arcuate edge **46** but rather stops short of them leaving a space **56** adjacent the outer arcuate edge **44**. There can also be a space **58** adjacent the inner arcuate edge **46**. Ends **60** and **62** have near them fasteners such as strips of mating hook and loop fasteners **64** and **68**. Also a tab **70** can fasten either to one of the strips **68** or to a patch **72**. This construction is preferred for smaller sized protective collars in which a very light weight combination of materials is used such as for cats or kittens For example, the exterior sheets may be sheets of thin or cloth reinforced plastic sheet and the spaces **56** and **58** allow for easy bending. An inner padding **52** can be foam or other material as described above; and it may be adhered to the first exterior sheet or the second exterior sheet or both; preferable at least to the exterior sheet that will form the inside of the cone proximate the animal that is wearing it. This construction is preferred for smaller pets such as kittens. It is more easily flexed so as to make eating easier for the pet.

Conveniently, a number of neck closure means may be provided in order to provide the ability to fashion a protective collar capable of fitting different size animals. As shown in FIGS. **1**, **3** and **4**, a series of loops **54** are sewn into the hem. These can be made of elastic material so as to stretch to accept the pet's normal collar. Alternatively, a string **62** or other elongated member can be applied through the loops and pulled comfortably around the animal's neck to keep the unit in place. In another embodiment, a drawstring sewn into the inner edge might also be useful to further secure the collar on the animal.

When placed on an animal, the inner opening **30** is adapted to fit securely around the neck of the animal, and the outer opening **32** is of sufficient size to prevent the animal fitted with the protective collar from contacting an area of the body to be protected. If desired, the inner arcuate edge of the collar may be lined with a softer material to increase the comfort of the collar.

Referring to FIG. **12**, with the construction as described above, providing a bendable and resilient construction, sufficient to be self supporting, the protective collar can be folded outwardly along its outer margin to provide a cuff **70**. This will allow more freedom of movement for the pet's head giving the protective collar more variety of configurations for a wide range of pet sizes.

Exhibit 1
Page 12

7

Notably, these constructions for a protective collar do not have to slip over the head of the pet, but rather can close around the neck.

The exterior sheet or sheets such as sheets **10** and **20** in FIG. **1** can be made as spaces for advertising or personal messages by owners. Also the collar strip strung into the loops **54** can carry advertising or other types of messages. Such messages can relate to beneficial or charitable content or they can be commercial. The collar strip can be reserved with an area in which the owner can implement her own message

The invention further provides a method of using a pet protective collar as described above as a veterinary restraint. The method comprises placing a collar such as that described herein around the neck of an animal, and securing as described. Conveniently, the collar of the invention is suitable to protect an area from contact by the animal's mouth, and yet is comfortable enough to wear that the animal will tolerate the collar.

An additional feature of the invention lies in the ability to fold it into a small package for selling purposes or for the consumer to store it. One folding configuration is shown in FIGS. **7**, **8**A through **8**D. This configuration is most suitable for smaller sizes with very easily flexed soft material such as the version described as illustrated in FIGS. **4** and **5**. In this fold configuration the ends **60** and **62** meet and the fold points at **56**a and **56**b are together, the soft material being able to allow the fold points **56**a and **56**b to settle together. Another fold configuration is shown in FIGS. **6** and **9**A through **9**B. This configuration is most suitable for larger sizes with less easily flexed material such as the version described and illustrated in FIGS. **1** and **2**. In this fold configuration ends **16** and **18** meet and are held together by the tabs **40** and **38** fastening to a mating strip **34** while the fold points **28**a and **28**b are separate and the fold point **28**b is captured between close to the ends **16** and **18**.

The collar is thus suitable for use in a method of protecting a wound from a surgical procedure, an injury that is non-surgical in nature, or to prevent mouth contact of an area to which a topical medicament has been applied.

When applied, it is known that some animals will use their teeth to try to dislodge the collar. This is where adhering the inside layer to the padding is particularly useful because it prevents the animal from finding or creating a fold by biting.

The foregoing detailed description of exemplary and preferred embodiments is presented for purposes of illustration and disclosure in accordance with the requirements of the law. It is not intended to be exhaustive nor to limit the invention to the precise form or forms described, but only to enable others skilled in the art to understand how the invention may be suited for a particular use or implementation. The possibility of modifications and variations will be apparent to practitioners skilled in the art. No limitation is intended by the description of exemplary embodiments which may have included tolerances, feature dimensions, specific operating conditions, engineering specifications, or the like, and which may vary between implementations or with changes to the state of the art, and no limitation should be implied therefrom. This disclosure has been made with respect to the current state of the art, but also contemplates advancements and that adaptations in the future may take into consideration of those advancements, namely in accordance with the then current state of the art. It is intended that the scope of the invention be defined by the Claims as written and equivalents as applicable. Reference to a claim element in the singular is not intended to mean "one and only one" unless explicitly so stated. Moreover, no element, component, nor method or process step in this disclosure is intended to be dedicated to

8

the public regardless of whether the element, component, or step is explicitly recited in the Claims. No claim element herein is to be construed under the provisions of 35 U.S.C. Sec. 112, sixth paragraph, unless the element is expressly recited using the phrase "means for . . . " and no method or process step herein is to be construed under those provisions unless the step, or steps, are expressly recited using the phrase "comprising step(s) for . . . "

What is claimed is:

**1**. A protective collar effective as a veterinary restraint when fitted on an animal, the protective collar comprising:
    a layered assembly comprising;
        a first sheet comprising a flexible substantially non-resilient material having inner and outer arcuate edges extending between a first end and a second end of the first sheet, the inner and outer arcuate edges comprising single circular arcs, wherein the outer arcuate edge has a substantially greater radius than the inner edge;
        a second sheet comprising a flexible substantially non-resilient material and having a substantially similar shape to that of the first sheet;
        a flexible resilient padding layer, forming a generally similar shape to the first and second sheets located between said first and second sheets, such that when assembled the first and second sheets and the padding layer form the layered assembly having an outer arcuate edge and an inner arcuate edge and a first end and a second end;
        the first sheet and the second sheet and the padding layer between them being formed into the assembly by securing together the outer arcuate edges and the inner arcuate edges and the first and second ends of the first and second sheets;
        a closure, effective to secure the first and second ends of the protective collar, such that when the first and second ends of the protective collar are secured, a closed configuration is formed having an inner opening and an outer opening, the inner opening being substantially smaller than the outer opening, wherein the outer opening is configured to encompass the wearer's head and the inner opening is configured to encompass a wearer's neck but not the head;
        wherein the protective collar is sized and shaped to encompass both the wearer's head and neck on different parts of the restraint.

**2**. The protective collar of claim **1** further comprising a plurality of radial stitching lines at least partially extending between the inner arcuate edge and the outer arcuate edge of the layered assembly, operative to effectively segment the collar into panels, and such that the stitches are further effective as fold lines in order to easily fold the collar for packaging or storage.

**3**. The protective collar of claim **2**, wherein the stitching lines comprise a first radial stitching line approximately centrally of the layered assembly between the first and second ends and second and third radial stitching spaces approximately angularly equally from the first radial stitching line.

**4**. The protective collar of claim **1** wherein upon securing the closure the collar forms a truncated cone, wherein the outer opening is of sufficient size to prevent the animal fitted with the protective collar from contacting an area of the body intended to be protected and the outer opening is sized to encompass a cranium of the animal.

**5**. The protective collar of claim **1**, wherein the means of securing the first and second sheets to the resilient padding

Exhibit 1
Page 13

US 8,042,494 B2

**9**

layer comprises laminating or otherwise adhering the resilient padding layer to at least one of the first and second sheets.

**6**. The protective collar of claim **1**, wherein the means of securing the first and second sheets to the resilient padding layer comprises the use of stitching.

**7**. The protective collar of claim **1**, wherein the means of closure comprises the use of hook and loop strips located respectively proximate the first and second ends of the collar.

**8**. The protective collar of claim **1**, further providing a means for identifying the animal upon which the collar is fitted.

**9**. A protective collar effective as a veterinary restraint when fitted on an animal, the protective collar comprising:

a layered assembly comprising;

a first sheet comprising a flexible substantially nonresilient material having inner and outer arcuate edges extending between a first and second end of the first sheet, the inner and outer arcuate edges comprising circular arcs, wherein the outer arcuate edge has a substantially greater radius than the inner edge;

a second sheet comprising a flexible substantially nonresilient material and having a substantially similar shape to that of the first sheet;

a flexible resilient padding layer. in the form of a sheet of a generally similar shape to the first and second sheets located between said first and second sheets, such that when assembled the first and second sheets and the padding layer form the layered assembly having an outer arcuate edge and an inner arcuate edge and a first end and a second end;

the first sheet and the second sheet and the padding layer between them being formed into the assembly by securing together the outer arcuate edges and the inner arcuate edges and the first and second ends of the first and second sheets;

a closure, effective to secure the first and second ends of the protective collar, such that when the first and second ends of the protective collar are secured a closed configuration is formed having an inner opening and an outer opening, the inner opening being smaller than the outer opening to provide a truncated cone shape.

**10**. The protective collar of claim **9**, wherein the second radial stitching line is angularly spaced toward the first end, the third radial stitching line is angularly spaced toward the

**10**

second end, the angular distance from the second radial stitching line to the first end and the angular distance from the third radial stitching line to the second end being each less than the angular distance between the second and third radial stitching lines, whereby upon folding at the second and third angular stitching lines the first end and the second end respectively will be in a position angularly short of the angular distance between the second and the third radial stitching lines.

**11**. The protective collar of claim **1**, wherein the circular arcs comprise semi-circular arcs and the sheets are flat when the collar is completely opened.

**12**. The protective collar of claim **9**, wherein the circular arcs comprise semi-circular arcs and the sheets are flat when the collar is completely opened.

**13**. A protective E-collar, comprising:

a layered assembly comprising;

a first sheet comprising a flexible substantially nonresilient material having inner and outer arcuate edges extending between a first end and a second end of the first sheet;

a second sheet comprising a flexible substantially nonresilient material and having a substantially similar shape to that of the first sheet;

a flexible resilient padding layer, forming a generally similar shape to the first and second sheets located between said first and second sheets, such that when assembled the first and second sheets and the padding layer form the layered assembly having an outer arcuate edge and an inner arcuate edge and a first end and a second end;

the first sheet and the second sheet and the padding layer between them being formed into the assembly by securing together the outer arcuate edges and the inner arcuate edges and the first and second ends of the first and second sheets;

a closure, effective to secure the first and second ends of the protective collar, such that when the first and second ends of the protective collar are secured, a closed configuration is formed having an inner opening and an outer opening, the inner opening being substantially smaller than the outer opening;

wherein only the inner opening of the two openings is adapted to fit securely around the neck of the wearer.

\* \* \* \* \*

Exhibit 1
Page 14

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Imagine That International, Inc. dba All Four Paws

**DEFENDANTS**

Contech Enterprises, Inc.

**(b)** County of Residence of First Listed Plaintiff   Los Angeles
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   British Columbia Canada
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Law Office of Jon E. Maki
4135 Calle Isabelino San Diego CA 92130  858.876.2580

Attorneys (If Known)

'12CV1153 IEG  WVG

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
     Plaintiff

☐ 2  U.S. Government
     Defendant

☒ 3  Federal Question
     (U.S. Government Not a Party)

☐ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
     Proceeding

☐ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated or
     Reopened

☐ 5  Transferred from
     another district
     (specify)

☐ 6  Multidistrict
     Litigation

☐ 7  Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
35 USC 271

Brief description of cause:
Patent infringement.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
05/10/2012

SIGNATURE OF ATTORNEY OF RECORD
/s Jon E. Maki

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.    Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example:    U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.    Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.